UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-11546-RWZ

ARTHUR J. ROBERTS, JR.

v.

TOWN OF SCITUATE, et al.

MEMORANDUM AND ORDER

ZOBEL, D.J.

For the reasons stated below, the Court (1) directs the plaintiff to file an amended complaint; (2) denies without prejudice the defendants' motion to dismiss; (3) denies without prejudice the plaintiff's motion for additional time to serve the defendants; and (4) grants the plaintiff's motion to change a defendant.

I.   Background

Arthur J. Roberts, Jr. brings this pro se civil rights action in which he complains that the Town of Scituate ("Town") and others wrongly brought and prosecuted criminal proceedings against him to collect an excise tax. In an earlier order, the Court granted Roberts's motion for leave to proceed in forma pauperis. The complaint is now before the Court for screening pursuant to 28 U.S.C. § 1915(e)(2).

A.   Factual Allegations

Following is a summary of the complaint. On January 29, 2010, Roberts purchased a cashier's check in the amount of $959.98 at a credit union to pay "two excise taxes" he owed on his automobile, so that he could register the vehicle with the

Massachusetts Registry of Motor Vehicles ("RMV"). A Town employee at the office of the Deputy Tax Collector informed Roberts that she would "remove the bills from the RMV computer database so the vehicle in question could be registered." Compl. at 4, ¶ 4. Thereafter, Roberts discovered that his payment of the excise taxes was not reflected in the RMV's database. He contacted the Town's Tax Collector and the Deputy Tax Collector to try to resolve the problem, but they refused to mark the bill for the excise taxes as paid.

On February 1, 2010, Roberts stopped payment on the bank check and notified the Deputy Tax Collector thereof in writing the following day. On February 27, 2010, he received a letter from the Deputy Tax Collector stating that the Town would pursue criminal charges against him. Roberts responded in writing that this was a civil, not criminal, matter.

There ensued a series of interactions between plaintiff and members of the Scituate Police Department, Town tax officials, the Town Clerk and deputy as well as the Judge, the Clerk Magistrate and court and probation officers attached to the Hingham District Court.

The Town did apply for a criminal complaint for larceny by check under Mass. Gen. L. Ch. 266, §37. Although summons issued, Roberts alleges that he was not served and he was arrested some weeks later for failing to appear at this arraignment. He reciprocated with applications for criminal complaints against the Clerk Magistrate and several town officials, as well as requests for internal affairs hearings to the Chief of Police.

A plea agreement to continue the criminal case against plaintiff without a finding

if he paid the Town $959.89 and withdrew his application for criminal complaints, apparently foundered on a misunderstanding of the amount due to the Town and the inability of all parties to act reasonably and with even a modicum of restraint.

**B.    Claims**

Roberts names as defendants the Town, Tax Collector Jane Lepardo and several members of her department (John Brady; Mark Brady[1]; Beth Cunningham), members of the Town's police department (Chief of Police Brian Stewart; Lieutenant John Rooney; Sergeant James Gilmartin), court employees (Clerk Magistrate Joseph Ligotti; a Jane Doe assistant clerk); Justice Ronald Moynihan, a John Doe prosecutor, and Probation Officers (Thomas Costello; Barry Sullivan).  The plaintiff purports to bring this action under 18 U.S.C. §§ 241 and 241, 42 U.S.C. § 1983, and the Fourteenth Amendment of the United States Constitution.

He claims that the violation of his rights occurred in four different "stages," and summarizes his claims as follows: the defendants (1) "openly and grossly violated" unspecified "Civil Rights" of the plaintiff "under the Color of Law"; (2) "utilized the criminal legal system to collect civil debts and have caused the Plaintiff irreparable harm both physically and emotionally as well as to his ability to work and properly conduct his life as guaranteed under the U.S. Constitution"; (3) manipulated the criminal justice system and thereby violated the plaintiff's rights Fourteenth Amendment due process; and (4) "engaged together in a Criminal Conspiracy to deprive the plaintiff of his rights

---

[1] Roberts identifies John Y. Brady and Mark Brady as Deputy Tax Collectors for the Town.  Roberts sometimes refers to "Brady" or "Deputy Tax Collector" without identifying the specific defendant to which he is referring.

3

under [18 U.S.C. §§ 241 and 242]." Compl. at 13, ¶¶ A-D.

### C. Procedural History

Summonses have not issued pending screening of the case. On January 25, 2012, certain defendants (Gilmartin, Lepardo, Rooney, the Town, and Stewart) filed a motion to dismiss (Docket #5) under Fed. R. Civ. P. 12(b)(5). In support of their motion, the defendants argue the action should be dismissed because Local Rule 4.1 provides for the automatic dismissal of an action by the Clerk fourteen days after the 120-day period prescribed for service in Fed. R. Civ. P. 4(m) expires.

In response to the defendants' motion to dismiss, Roberts filed a motion (Docket #8) for additional time to serve the defendants. The plaintiff also filed a motion (Docket #9) to substitute a defendant. Roberts represents that John Y. Brady passed away on September 11, 2011. Roberts asks that the Court allow him to substitute the Estate of John Y. Brady as a defendant.

On March 9, 2012, the Court granted Roberts's motion for leave to proceed in forma pauperis and stated that summonses would not issue pending the screening of the complaint.

## II. Discussion

### A. Screening of the Complaint

#### 1. Court's Authority to Screen the Complaint

Because the plaintiff is proceeding in forma pauperis, the complaint is subject to screening under 28 U.S.C. § 1915(e)(2). This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the

4

action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). In conducting this review, the Court liberally construes the plaintiff's complaint because he is proceeding pro se. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### 2. Claims Under 18 U.S.C. §§ 241 and 242

Roberts has failed to state a claim under 18 U.S.C. §§ 241 and 241, which prohibits the violation of civil rights. These statutes provide for criminal prosecution by the United States--not by a private citizen. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as a prosecutor can bring a complaint under 18 U.S.C. §§ 241-242."). Therefore, Roberts's claims under 18 U.S.C. §§ 241 and 242 fail.

### 3. Due Process Claims Under 42 U.S.C. § 1983

Roberts states that he is bringing claims under 42 U.S.C. § 1983 and under the Fourteenth Amendment for violations of his right to due process. Because "[section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)), and "a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983," Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001), the Court will consider whether Roberts has stated a claim under 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment right to due process.

The thrust of Roberts's due process claim is that the defendants violated his

rights by using a criminal procedure to enforce a civil monetary obligation.  This core assumption, however, is factually faulty.  According to his own allegations, Roberts was charged with larceny by check for presenting a cashier's check for satisfaction of taxes he owed to the Town and then stopping payment on the check before the Town received the funds.  He was not criminally charged with failing to pay an excise tax.  Whether Roberts's conduct in stopping payment on the check meets all of the elements of larceny by check as set forth in Mass. Gen. L. Ch. 266, §37 is a separate issue--and not reviewable by this Court--but Roberts improperly insists he was criminally prosecuted for failing to pay a civil fee.

Even if the criminal prosecution was improper, Roberts's allegation that the defendants wrongfully used a criminal prosecution to collect a civil debt does not state a violation of his right to due process.  "[T]he due process clause of the Fourteenth Amendment does not provide a substantive right to be free from criminal prosecutions unsupported by probable cause." Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999) (discussing Albright v. Oliver, 510 U.S. 266, 274-75 (1994)).  If, indeed, Roberts was maliciously prosecuted, he could seek recourse through a state law tort claim, but he cannot bring a § 1983 claim for a violation of his right to due process.  See Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st Cir. 1999) ("A 1983 claim for malicious prosecution as a deprivation of procedural due process is barred where, as here, the state's tort law recognizes a malicious prosecution cause of action.").[2]

---

[2] Although not crucial to the Court's conclusion that the plaintiff cannot maintain a § 1983 malicious prosecution due process claim, the Court observes that Roberts has not even stated a state tort law claim for malicious prosecution.  To plead a malicious prosecution claim under Massachusetts law, a plaintiff must allege that the defendant:

Further, it is unclear whether the Court even has jurisdiction to entertain any claims concerning this criminal proceeding. To the extent that the criminal prosecution at issue has ended, the Court is without jurisdiction to entertain any claim challenging the validity of orders and judgments in that case. Under the Rooker-Feldman doctrine, a federal district court lacks jurisdiction over a final judgment of a state court. See Geiger v. Foley Hoag LLP Retirement Plan, 521 F.3d 60, 65 (1st Cir. 2008). In other words, the doctrine "bars parties who lost in state court from 'seeking review and rejection of that judgment' in federal court.'" Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 68 (1st Cir. 2008) (quoting Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see also D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The doctrine applies to (1) "cases brought by state-court losers"; (2) "complaining of injuries caused by state-court judgments"; (3) "rendered before the district court proceedings commences"; and (4) "inviting district court review and rejection of those judgments." Lance v. Dennis, 546 U.S. 459, 464 (2006) (per curiam). Thus, the Court cannot review the propriety of the show cause hearing, the issuance of the criminal complaint, or the conditions of probation.[3]

---

"(i) instituted criminal proceedings (ii) with malice and (iii) without probable cause, and (iv) that the proceedings were terminated in the accused's favor." Limone v. United States, 579 F.3d 79, 89 (1st Cir. 2009) (citing Correllas v. Viveiros, 410 Mass. 314, 318 (1991)). Here, Roberts does not allege that the proceeding has been terminated in his favor.

[3]Roberts's allegation that he was denied appellate review is irrelevant to the question of whether the Rooker-Feldman doctrine prevents this Court from entertaining claims that would result in the review of state court judgments. Further, even if Roberts's appeal was not docketed at Ligotti's behest, Roberts has failed to state a

To the extent that the criminal proceedings against Roberts are still pending, the Court abstains from exercising jurisdiction over claims concerning the ongoing prosecution. See Younger v. Harris, 401 U.S. 37, 46 (1971)); In re Justices of Superior Court Dept. of Mass. Trial Court, 218 F.3d 11, 16 (1st Cir. 2000) ("Federal courts have long recognized 'the fundamental policy against federal interference with state criminal proceedings.'" (quoting Younger v. Harris, 401 U.S. 37, 46 (1971))). Under Younger, federal courts "abstain from interfering with state court proceedings even where defendants claim violations of important federal rights," In re Justices, 218 F.3d at 17, as long as the "federal claims" can be "raised and resolved somewhere in the state process," Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 36 (1st Cir. 2004) (emphasis added).

### 4. Judicial and Prosecutorial Immunity

Moreover, the doctrine of judicial immunity precludes the claims against Justice Moynihan. See Pierson v. Ray, 386 U.S. 547, 554 (1967) (stating that judges are immune "from liability for damages for acts committed within their judicial jurisdiction . . . even when the judge is accused of acting maliciously and corruptly"). All of the conduct by Justice Moynihan of which Roberts complains was undertaken in his judicial

---

violation of his right to due process because he has not alleged that his state remedies were inadequate. If, indeed, the actions of the clerk magistrate absolutely prevented Roberts from filing an appeal and he had no other way to pursue appellate relief, Roberts could have petitioned the Supreme Judicial Court for relief under Mass. Gen. L. Ch. 211, § 3. See Reznik v. Dist. Ct. Dep't of Trial Ct., 456 Mass. 1001 (2010) (rescript) (where litigant's notice of appeal was returned to him by district court and district court clerk's office had advised litigant in writing that it would accept no further filings from him, "further attempts to obtain review in the ordinary course would have been futile" and relief under Mass. Gen. L. Ch. 211, § 3 was available).

capacity.

Ligotti's issuance of the criminal complaint and his refusal to allow Roberts to present evidence at the show cause hearing, even if wrongful, are also protected by the doctrine of judicial immunity. Judicial immunity extends to decisions makers other than judges who have discretionary authority to determine the applicability of the governing law to the individual facts in each case. See Antoine v. Byers & Anderson, Inc., 508 U.S. 429 , 435-36 (1993); Harper v. Begley, 37 F.3d 1484, 1994 WL 577488, at *1 (1st Cir. Oct. 19, 1994); Commonwealth v. O'Neil, 418 Mass. 760, 767 (1994); LaLonde v Eissner, 405 Mass. 207, 210-11 (1989). Although not a judge, Ligotti is entitled to judicial immunity because he is authorized under Massachusetts law to adjudicate an application for a criminal complaint. See Mass. Gen. L. Ch. 218, § 35; see also Cruthird v. Clinton Div. of Dist. Ct. Dep't, 2006 WL 3161487 (Mass. App. Ct. Nov. 3, 2006) (judicial immunity applied to clerk magistrate's denial of a criminal complaint because denial involved conduct in discharge of his official duties); cf., Harper v. Begley, 37 F.3d 1484, 1994 WL 577488, at *2 (1st Cir. Oct. 19, 1994) (judicial immunity extends to assistant clerk magistrate's issuance of a search warrant; explaining that issuance of a search warrant upon a finding of probable cause is a "discretionary judicial act" and state law authorizes clerks to determine the existence of probable cause and to issue search warrants).

Similarly, Roberts has failed to state a claim against the John Doe prosecutor because prosecutors are entitled to absolute immunity for claims arising out of conduct "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Even if the prosecutor wrongfully prosecuted

9

Roberts for larceny by check and colluded in the imposition of inappropriate terms of probation, he enjoys immunity from any claims based on this alleged misconduct.

### III. Motions

The defendants' motion to dismiss for failure to serve them is denied without prejudice as premature because summonses have not issued. Rule 4(m) of the Federal Rules of Civil Procedure does provide, "If a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, the time used for screening a complaint under 28 U.S.C. § 1915(e)(2) is good cause to extend the 120-day deadline of Rule 4(m) because the time required for screening the complaint is solely within the control of the district court. See Keller v. United States, 444 Fed. Appx. 909, 912 (7th Cir. 2011); Robinson v. Clipse, 602 F.3d 605, 608 (4th Cir. 2010); Williams v. Brar, 2012 WL 1554641, at *2 (E.D. Cal. Apr. 30, 2012); Nooh v. ReconTrust Co., N.A., 2012 WL 1075844, at *1 (W.D. Tenn. Mar. 29, 2012) (motions to dismiss under Fed. R. Civ. P. 12(b)(5) and 4(m) were "meritless" where summonses had not issued because case was being screened under 28 U.S.C. § 1915(e)(2)); see also Fed. R. Civ. P. 4(m) 1993 advisory committee's note (district court should "take care to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition").

The plaintiff's motion to extend the time to serve is denied without prejudice. If and when summonses issue, the plaintiff shall have 120 days from the date of the issuance of summonses to complete service.

The plaintiff's motion to substitute the Estate of John Y. Brady as a defendant is

allowed.

## III. Conclusion

Accordingly:

(1) If plaintiff would like to pursue this action, he shall, within thirty-five (35) days of the date of this Order, file an amended complaint that cures the above-discussed defects in the original complaint. Failure to comply with this directive will result in dismissal of the action.

(2) Defendants' motion to dismiss (Docket #5) is DENIED WITHOUT PREJUDICE.

(3) Plaintiff's motion for additional time to serve the defendants (Docket #8) is DENIED WITHOUT PREJUDICE.

(4) Plaintiff's motion to change a defendant (Docket #9) is ALLOWED. The Clerk shall change the docket accordingly.

SO ORDERED.

| | |
|---|---|
| July 16, 2012 | /s/ Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |